## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GREGORY G.,**[1] | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:23-cv-02439-GMH** |
| **FRANK BISIGNANO,**[2] *Commissioner of Social Security*, | |
| **Defendant.** | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Gregory G. brought this action seeking to reverse the final decision of the Commissioner of Social Security, Frank Bisignano ("Defendant" or "Commissioner"), affirming the denial of his application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405(g).  He alleges that the Administrative Law Judge ("ALJ") erred in determining Plaintiff's residual functional capacity ("RFC") and ability to perform past relevant work.  More specifically, he argues that the ALJ erred by discounting the medical opinions of state agency physicians Dr. J. Singh, M.D., and Dr. J. DeBorja, M.D. (the "State Agency Physicians") because of their reliance on the questionable records of Dr. César Sanjur Otero and Dr. Ariel B. Racine, and that the ALJ failed to analyze properly whether Plaintiff could perform his past relevant work as a security guard.  Plaintiff seeks reversal of the

---

[1] Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Dist. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf [https://perma.cc/N9T2-U5XG].

[2] Frank Bisignano, Commissioner of Social Security, is substituted for Kilolo Kijakazi pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Commissioner's decision and a judgment remanding the matter to the Commissioner for further administrative proceedings.  The Commissioner takes the opposite position, arguing that the ALJ's conclusion is properly supported by the record and should therefore be affirmed.

Based on the parties' arguments and review of the record, Plaintiff's motion for judgment of reversal is denied and Defendant's motion for judgment of affirmance is granted.[3]

## I.    BACKGROUND

### A.    Statutory and Regulatory Framework

To be eligible for DIB benefits under the Social Security Act, the Social Security Administration must find a claimant to be "disabled," meaning that the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  To make that determination, an ALJ gathers evidence, holds a hearing, takes testimony, and performs the following five-step, sequential inquiry of the disability claim:

Step one: whether the claimant is engaging in "substantial gainful activity";[4]

Step two: whether the claimant has a "severe" medically-determinable physical or mental impairment or combination of impairments;[5]

---

[3] The relevant docket entries for purposes of this Memorandum Opinion are: (1) the administrative record, ECF Nos. 7–8; (2) Plaintiff's Motion for Judgment of Reversal, ECF No. 20; and (3) Defendant's Motion for Judgment of Affirmance and Opposition to Plaintiff's Motion for Judgment of Reversal, ECF No. 26.  The page numbers cited herein are those assigned by the Court's CM/ECF system.

[4] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit."  20 C.F.R. § 404.1510.  "If [the claimant is] doing substantial gainful activity, [the Social Security Administration] will find that [the claimant is] not disabled." 20 C.F.R. § 404.1520(a)(4)(i).

[5] An impairment or combination of impairments is "severe" if it "significantly limit[s]" a claimant's "physical or mental ability to do basic work activities," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "seeing, hearing, [or] speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; exercising judgment; "[r]esponding appropriately to supervision, co-workers[,] and usual work situations"; or "[d]ealing with changes in a routine work setting."  20 C.F.R. § 404.1522.

Step three: whether the claimant's impairment is equivalent to one of the disabling impairments listed in the appendix of the relevant regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (known as the "listings");

After step three, the ALJ determines the claimant's residual functional capacity ("RFC")—i.e., the most he or she is able to do notwithstanding his or her physical and mental limitations;

Step four: whether the impairment prevents the claimant from performing his or her past relevant work;[6] and

Step five: whether the claimant, in light of his or her age, education, work experience, and RFC, is unable to perform another job available in the national economy.[7]

*See* 20 C.F.R. § 404.1520; *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). "An affirmative answer to question 1 or negative answers to questions 2 or 4 result in a determination of no disability. Affirmative answers to questions 3 or 5 establish disability." *Hines v. Bowen*, 872 F.2d 56, 58 (4th Cir. 1989) (citing 20 C.F.R. § 404.1520).

The claimant bears the burden of proof at the first four steps of the evaluation. *Callahan v. Astrue*, 786 F. Supp. 2d 87, 89 (D.D.C. 2011). At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy the claimant can perform. *Id.* In making this determination, an ALJ may call a vocational expert ("VE") to testify at the

---

[6] The applicable definition of "past relevant work" is work "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1) (amended 2024). If the claimant can perform his or her past relevant work, a finding of "not disabled" is required. 20 C.F.R. § 404.1520(a)(4)(iv) (defining the step four inquiry for DIB claims). On June 22, 2024, the definition of "past relevant work" changed to work "done within the past *five* years that was substantial gainful activity and that lasted long enough for [the claimant] to learn to do it" and that was not "started and stopped . . . in fewer than 30 calendar days." 20 C.F.R. § 404.1560(b)(1) (emphasis added); 89 Fed. Reg. 27,653 (Apr. 18, 2024) (outlining amendment to definition of "past relevant work"); 89 Fed. Reg. 48,138 (Jun. 5, 2024) (deferring effective date of amendment to June 24, 2024). The prior definition of "past relevant work" applies in this matter. *See* discussion *infra* Section III.B.2.

[7] At the fifth step, the ALJ may, "'[i]n the ordinary case, . . . resort[] to the applicable medical vocational guidelines'" (also known as "the grids") to determine whether the claimant is disabled. *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2. "The grids 'take[] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience.'" *Id.* (alteration in original) (quoting *Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)). However, when a claimant has additional limitations beyond those contemplated by the grids, the ALJ cannot rely on the grids alone to establish non-disability. *Id.* In such cases, the testimony of a vocational expert is generally required. *Smith v. Bowen*, 826 F.2d 1120, 1122 (D.C. Cir. 1987).

hearing as to whether, based on the claimant's RFC, he or she can perform other work that exists in the national economy.[8]  *Id.* at 90.

### B.    Plaintiff's Disability Claims and Procedural Posture

Plaintiff was born on October 25, 1962, and was 51 years old on his alleged disability onset date of September 1, 2014.  ECF No. 7-3 at 2.  Plaintiff filed an application for period of disability and DIB benefits on February 23, 2017, ECF No. 7-3 at 13, claiming that several disorders of the spine and knee rendered him unable to work, ECF No. 8 at 23.

On March 26, 2019, the Commissioner denied Plaintiff's application on the ground that Plaintiff was not disabled on any date between September 1, 2014, and December 31, 2017, Plaintiff's date last insured.  ECF No. 7-4 at 3.  Plaintiff submitted a Request for Reconsideration to the Commissioner on May 17, 2019, and the Commissioner affirmed the initial determination that Plaintiff did not qualify for DIB on June 24, 2021.  *Id.* at 11–12.  Plaintiff then submitted a Request for Hearing before an Administrative Law Judge on July 9, 2021.  *Id.* at 18.

The first hearing with the ALJ occurred on March 30, 2022.  ECF No. 7-2 at 74.  The ALJ took testimony from Plaintiff and a VE.  *Id.* at 85, 111.  At this hearing, Plaintiff testified about the history of his back pain, *id.* at 87–88; the severity of his symptoms, *id.* at 92, 95, 100–01; previously prescribed treatments, *id.* at 90, 93–94, 96–98; and how the pain has impacted his ability to work, *id.* at 90–91, 102.  Especially of note, however, is Plaintiff's testimony that he "didn't have any MRIs in the United States" and that the inclusion of MRIs he supposedly received between 2009 and 2011 in the records of his Panama-based medical providers, Drs. Sanjur Otero

---

[8] In determining whether "unskilled, sedentary, light, and medium jobs exist in the national economy" that a claimant can perform, a VE may rely on the Dictionary of Occupational Titles, 20 C.F.R. § 404.1566(d)(1), which "provides a brief description of occupations within the national economy and lists the capabilities that each occupation requires of a worker."  *Callahan*, 786 F. Supp. 2d at 90.

and Racine, must be a "mistake," as the alleged dates of those MRIs precede his relocation to Panama. *Id.* at 86–87. Additionally, Plaintiff testified that he is not rated disabled by the VA, despite a 20% disability rating being listed in the same records from Drs. Sanjur Otero and Racine. *Id.* at 109. After being asked a hypothetical question about whether an individual with Plaintiff's RFC would be able to perform any of Plaintiff's past relevant work, the VE at the first hearing testified that Plaintiff would be able to perform work as a customer service representative, gate guard, security guard, and chief guard. *Id.* at 113–14; *see also* ECF No. 7-3 at 39.

On April 13, 2022, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled, as he was able to perform past relevant work as a customer service representative, gate guard, security guard, and chief guard as actually and generally performed. ECF No. 7-3 at 39–40. Plaintiff requested that the Appeals Council review this decision. ECF No. 7-4 at 115–16. The Appeals Council remanded the case to the ALJ with the following guidance:

> The hearing decision does not contain an adequate evaluation of opinion evidence. The decision contains an evaluation of the persuasiveness of opinion evidence consistent with 20 CFR 404.1520c (current rules) instead of evaluating opinion evidence in accordance with 20 CFR 404.1527 (prior rules). If the initial claim was filed before March 27, 2017, the prior rules should be used. The claimant protectively filed an application for a period of disability and disability insurance benefits on February 23, 2017. The application was filed before March 27, 2017 and, as a result, opinion evidence should be evaluated using the prior rules. Although the decision cites to 20 CFR 404.1527, the decision contains an evaluation of the persuasiveness of opinion evidence, consistent with the current rules. Therefore, further consideration should be given to the opinion evidence of record.

ECF No. 7-3 at 47 (citations omitted).

A second hearing in front of the same ALJ was held on December 12, 2022, ECF No. 7-2 at 35, and the ALJ took testimony from Plaintiff and a different VE, *id.* at 41, 62. At the second hearing, Plaintiff testified that the main issue that prevents him from working is his lower back pain, which also radiates down his leg and to his right foot, *id.* at 43, and that this pain prevents

him from standing for a long time, walking, and driving, *id.* at 44. Plaintiff also testified that irritable bowel syndrome contributes to his inability to work. *Id.* at 51–52. Further, Plaintiff discussed his work as an autobody repairer, *id.* at 53, 55, an electrician helper, *id.* at 53, 55, a material handler,[9] *id.* at 54–56, 64, 68, and a security guard. *Id.* at 54, 56, 64–66. Plaintiff confirmed the accuracy of his testimony from the first hearing regarding the 2009–11 MRIs listed in the Sanjur Otero and Racine records, stating again that he did not receive them. *Id.* at 61.

The VE at the second hearing classified Plaintiff's past work at a car dealership as Automobile Body Repairer, an occupation that is exertionally medium and skilled, with an SVP of 7.[10] *Id.* at 63. The VE categorized Plaintiff's work as a Security Guard as exertionally light and semiskilled, with an SVP of 3, and his work as a Customer Service Representative as exertionally sedentary and skilled, with an SVP of 5. *Id.* Lastly, the VE classified Plaintiff's past work as a Material Handler as exertionally heavy and semiskilled, with an SVP of 3. *Id.* at 64. The ALJ then posed a hypothetical question to the VE, asking whether a person of Plaintiff's age, education, and work experience could perform any of Plaintiff's past work, assuming that the individual could perform the "full range of light work as defined by the DOT," but could only occasionally climb ramps and stairs, stoop, kneel, crawl, or crouch, and could never be exposed to vibration nor climb ladders, ropes, or scaffolds. *Id.* at 69. This hypothetical individual could also frequently balance and frequently reach, handle, and finger bilaterally, as well as maintain concentration for two hours at a time and remain on-task for 90% of a workday. *Id.* The VE

---

[9] Plaintiff and the ALJ refer to this position as "tool crib attendant" until the VE's testimony at the second hearing, possibly because the VE at the first hearing classified the position this way. *Id.* at 112. However, the VE at the second hearing classified this same work as "Material Handler" after considering the specific job functions described by Plaintiff. *Id.* at 67–68.

[10] "SVP" stands for "specific vocational preparation," a term "used within the DOT to define the time generally required to learn certain skills for particular jobs." *Tiana O. v. Kijakazi*, No. 20-cv-2051, 2023 WL 5348747, at *13 n.13 (D.D.C. Aug. 21, 2023). An SVP of 1–2 corresponds to unskilled work, 3–4 corresponds to semi-skilled work, and 5–9 corresponds to skilled work. *See id.*

testified that, out of all of Plaintiff's past relevant work, this hypothetical individual could perform only Plaintiff's job as a security guard. *Id.* at 70. The ALJ then posed another hypothetical, identical to the first one except that this individual could never kneel or crawl, and the VE testified that the individual could still perform work as a security guard. *Id.* The ALJ posed one last hypothetical, identical to the second except that the individual could only occasionally reach, handle, and finger bilaterally, and the VE testified that the individual would no longer be able to perform as a security guard. *Id.*

**C.     The ALJ's Decision**

On December 27, 2022, the ALJ issued another unfavorable decision, this time finding Plaintiff "not disabled" because he could perform his past relevant work as a security guard. *Id.* at 28–29. The following summary of the ALJ's second decision focuses on information relevant to Plaintiff's arguments for remand, which primarily concern the reduced weight given to the medical opinions of the State Agency Physicians when determining Plaintiff's RFC and whether the ALJ properly concluded that Plaintiff could perform his past relevant work as a security guard. *See generally* ECF No. 20.

1.     Substantial Gainful Employment, Severe Impairments, and the Listings

At step one, the ALJ found that Plaintiff did not engage in any substantial gainful activity between his alleged onset date of September 1, 2014, and his date last insured of December 31, 2017. ECF No. 7-2 at 24. The ALJ found at step two that Plaintiff had five severe impairments through his date last insured: lumbar L4-L5 disc bulge; multilevel cervical disc herniation with central and foraminal stenosis; cervical spine radiculopathy with right upper extremity weakness; bilateral knee secondary severe osteoarthritis; and spondylosis. *Id.* The ALJ also determined that there was insufficient evidence to find a severe medically determinable impairment of irritable

bowel syndrome or a medically determinable severe mental impairment. *Id.* at 25. At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of any of the listings. *Id.*

### 2. Plaintiff's RFC

The ALJ then formulated Plaintiff's RFC, determining that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b), but with some non-exertional limitations. *Id.* at 24. The ALJ found that Plaintiff can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; can frequently balance, occasionally stoop and crouch, and never kneel or crawl; can frequently reach above the shoulder with both extremities and handle and finger with both hands; and can never be exposed to vibration, and can maintain concentration for two hours at a time and stay on task for 90 percent of the workday. *Id.* In coming to this RFC, the ALJ considered Plaintiff's reported symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence, as required by 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p. *Id.*

The ALJ followed the two-step process for the evaluation of symptoms outlined in SSR 16-3p. *Id.* at 25. She first determined whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms. *Id.* After evaluating Plaintiff's claimed symptoms, including neck and lower back pain that extended down to his legs and right foot and an inability to stand for long periods of time or drive, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* at 27. The ALJ then evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit the claimant's work-related activities. *Id.* at 27–28. During this part of the analysis, the

ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 27. According to the ALJ, the only evidence which could support the severity and persistence of Plaintiff's claimed symptoms would be the records from Drs. Sanjur Otero and Racine, each of which contain subjective complaints, summaries of record, physical examinations, and diagnoses, and which indicate that Plaintiff had an antalgic gait, decreased ranges of motion of the spine, and positive straight leg raising. *Id.*; *see also* ECF No. 8-1 at 235, 242, 247. However, the ALJ questioned the credibility of these records for several reasons. First, the Sanjur Otero and Racine records mention that Plaintiff underwent MRI scans between 2009 and 2011, ECF No. 8-1 at 235, 242–43, 247–48, but the reports from these scans are not in the record, *see* ECF No. 7-2 at 27, and Plaintiff testified during the first ALJ hearing that he did not receive any MRIs during that time period, *see id.* at 86–87. Second, the Sanjur Otero and Racine records mention a 20% disability rating from the VA, but this rating is entirely absent from his VA medical records, ECF No. 8-1 at 11, 234, 242, 247, and Plaintiff testified that he had not been found partially disabled by the VA, ECF No. 7-2 at 109. Lastly, the ALJ noted that the Sanjur Otero and Racine records are nearly identical in their content and wording, despite supposedly detailing three different consultations by two different doctors over a four-year period. ECF No. 7-2 at 27; *see generally* ECF No. 8-1 at 233–249.

Because of those issues and inconsistencies, the ALJ decided to give more weight to Plaintiff's medical records from the VA when determining Plaintiff's RFC. ECF No. 7-2 at 27. Overall, as the ALJ found, the VA records show significantly less severe symptoms and testing results, and more conservative treatment decisions, than the Sanjur Otero and Racine records suggest. *Id.* Specifically, the ALJ pointed to the fact that the results of the physical examinations

during Plaintiff's visits for back pain in the VA records were "essentially normal," revealing only "tenderness in the spine and left medial quad tendon" and a negative straight leg raising test. *Id.* (citing ECF No. 8-1 at 98, 206). Plaintiff's back pain was then treated conservatively using a muscle relaxant, a non-steroidal anti-inflammatory drug, and Tylenol. *Id.* (citing ECF No. 8-1 at 90, 207). Additionally, the ALJ observed that during Plaintiff's primary care visit for knee pain, the VA records demonstrate "some tenderness of the medial quad tendon, but no effusion and full range of motion of the left knee." *Id.* at 27–28 (citing ECF No. 8-1 at 79).

The ALJ evaluated the opinion evidence under the requirements of 20 C.F.R. § 404.1527 and carried forward the questionable reliability of the Sanjur Otero and Racine records into her weighing of the opinions of the State Agency Physicians, Drs. Singh and DeBorja—the only opinion evidence in the record. ECF No. 7-2 at 25, 28. Finding that the only evidence that could have led the State Agency Physicians to include a four-hour standing limitation would be the Sanjur Otero and Racine records, the ALJ decided to afford little weight to the opinions of the State Agency Physicians. *Id.* at 28. As such, the ALJ relied mostly on the VA records to determine that Plaintiff could stand for six hours in an eight-hour workday, citing the same sections of the VA records that indicate relatively normal physical exam results and conservative treatment for both Plaintiff's spinal and knee disorders. *Id.*

### 3. Conclusion of the Five-Step Sequential Inquiry

At step four, the ALJ found that Plaintiff's RFC left him capable of performing his past relevant work as a security guard "as actually and generally performed." *Id.* at 29. In reaching this conclusion, the ALJ accepted the VE's testimony at the second hearing that a person of Plaintiff's age, education, work experience, and RFC could perform his past work as a security guard. *Id.* at 29, 70.

## II.    LEGAL STANDARD

A federal district court has jurisdiction over a civil case challenging a final decision of the Commissioner.  42 U.S.C. § 405(g).  A reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record and a correct application of the relevant legal standards.  *Id.*; *Butler*, 353 F.3d at 999.

"[T]he plaintiff bears the burden of demonstrating that the Commissioner's decision is not based on substantial evidence or that incorrect legal standards were applied."  *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It requires "more than a scintilla [of evidence], but can be satisfied by something less than a preponderance of the evidence."  *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002)).  Ultimately, the substantial evidence standard is a "low bar," *La. Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 7 (D.C. Cir. 2021), and "requires considerable deference to the decision rendered by the ALJ."  *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency [under the substantial evidence standard] is not high.").  The reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment "concerning the credibility of the evidence with its own."  *Crosson*, 907 F. Supp. at 3; *see also Butler*, 353 F.3d at 999 (district court's role is not to reweigh the evidence but only to determine whether the ALJ's findings are "based on substantial evidence and a correct application of the law").

However, "this standard of review requires the Court to carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weights given to the facts." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009); *see also Lane-Rauth*, 437 F. Supp. 2d at 65 ("[T]his standard of review 'calls for careful scrutiny of the entire record,' to determine whether the Commissioner, acting through the ALJ, 'has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits[.]'" (second alteration in original) (quoting *Butler*, 353 F.3d at 999)). In applying this standard, courts "must also be mindful of the harmless-error rule. Consequently, even if [the court] perceive[s] error," it must "affirm the Commissioner's decision unless the error is prejudicial." *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021).

Finally, the Court's job is to "consider the grounds actually proffered by the ALJ" rather than to make those determinations for itself, *Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017), or credit "post-hoc rationalization[s]" advanced by the parties, *Cooper v. Berryhill*, No. 16-cv-1671, 2017 WL 4326388, at *5 (D.D.C. Sept. 28, 2017). *See also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (holding that a reviewing court "must judge the propriety of [an agency's judgment] solely by the grounds invoked by the agency"); *Jones v. Astrue*, 647 F.3d 350, 356 (D.C. Cir. 2011) (citing *Chenery*, 332 U.S. at 196).

## III.    DISCUSSION

Plaintiff challenges the ALJ's final determination on two separate grounds. First, Plaintiff contends that the ALJ erred in assigning little weight to the opinions of the State Agency Physicians. ECF No. 20 at 3. According to Plaintiff, the ALJ did not provide adequate reasoning to support this decision and the dismissal of the findings of Drs. Sanjur Otero and Racine on which

the State Agency Physicians' opinions were based. *Id.* at 3–4. This alleged error was harmful, Plaintiff contends, because the four-hour standing limitation suggested by the State Agency Physicians was not included in Plaintiff's RFC, and if had it been included, Plaintiff would have been found unable to perform past relevant work. *Id.* at 4–5. Second, Plaintiff alleges that the ALJ erred in her evaluation of Plaintiff's ability to perform his past relevant work as a security guard. *Id.* at 5. Plaintiff argues that the record did not contain sufficient evidence to find that he could perform his past relevant work as a security guard, and also that the current regulatory definition of "past relevant work" should apply in this case. *Id.* at 5–7. For the reasons stated below, all of these arguments fail.

### A.     The Opinions of the State Agency Physicians

Plaintiff argues that this case should be remanded for further administrative proceedings because the ALJ failed to properly evaluate the medical opinions of the State Agency Physicians. *Id.* at 3. Specifically, Plaintiff contends that the ALJ provided "scant reasons" for assigning little weight to the opinions, which Plaintiff asserts are "consistent with each other and the record they reviewed." *Id.* at 4. Plaintiff also accuses the ALJ of "play[ing] doctor" and "cherrypick[ing]" for crediting the progress notes from the VA medical records over the Sanjur Otero and Racine records. *Id.* Because the ALJ sufficiently provided adequate reasoning for discounting the opinions of the State Agency Physicians, these arguments fail.

As stated above, the Court is not to replace the Commissioner's judgment "concerning the credibility of the evidence with its own." *Crosson*, 907 F. Supp. at 3. "Where the ALJ credits and discredits certain medical opinions based on conflicting evidence in the record, it is not for the Court to reweigh the evidence." *Bennett v. Saul*, No. 18-cv-1745, 2019 WL 5549815 at *11 (D.D.C. Oct. 27, 2019). Indeed, "the role of this Court is limited to ensuring that each of the ALJ's

findings is supported by more than a scintilla of evidence." *Wonzell C. v. O'Malley*, No. 22-cv-3828, 2024 WL 3738819, at \*12 (D.D.C. May 8, 2024) (quoting *Treadway v. Kijakazi*, No. 20-cv-392, 2022 WL 989230, at \*4 (W.D.N.C. Mar. 31, 2022)), *report and recommendation adopted*, 2024 WL 3288070 (D.D.C. July 3, 2024).  Thus, the Court is concerned only with whether "the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weights given to the facts." *Pinkney*, 675 F. Supp. 2d at 14.

Plaintiff asserts that the ALJ provided "scant reasons" for affording little weight to the opinions of the State Agency Physicians.  ECF No. 20 at 4.  The Court disagrees.

The ALJ's rationale is clear, stating that the State Agency Physicians' opinions, especially their standing and walking limitations, are less credible because "the only evidence that would support their assessments of standing and walking limitations are the records from Drs. Sanjur Otero and Racine, which" the ALJ found "suspect for several reasons."  ECF No. 7-2 at 28.  In support of her assertion that the Sanjur Otero and Racine records are unreliable, the ALJ points to three separate concerns: (1) the records mention MRI imaging that Plaintiff testified he did not receive; (2) the records list a disability rating from the VA that is entirely absent from Plaintiff's VA medical records and which Plaintiff testified he never received; and (3) the records contain almost identical language and data, despite containing summaries of three separate evaluations conducted by two different doctors over a period of approximately four years.[11]  *Id.*  As discussed below, the record supports the ALJ's finding that the State Agency Physician's opinions relied

---

[11] Plaintiff misstates this third concern in his motion, claiming that "the ALJ cast aspersions that *the state agency experts' opinions* deserved little weight, in part, because the *opinions* were 'almost identical copies signed by different physicians with different dates.'"  ECF No. 20 at 4 (emphases added) (quoting ECF No. 7-2 at 28).  The ALJ asserts that the Sanjur Otero and Racine records on which the State Agency Physicians apparently relied are unusually similar, not the opinions of the State Agency Physicians themselves.  ECF No. 7-2 at 27–28.

heavily on the Sanjur Otero and Racine records, as well as her finding that those records were unreliable.

There is more than sufficient evidence substantiating the ALJ's finding that in drafting their opinions, the State Agency Physicians relied on the Sanjur Otero and Racine records. The ALJ reasoned that the only evidence in the record that could have possibly supported the standing and walking limitations came from those records, as none of the other medical evidence could warrant such a limitation. ECF No. 7-2 at 28. Outside of the Sanjur Otero and Racine reports, the only medical evidence available to the State Agency Physicians and the ALJ was Plaintiff's VA medical records. ECF No. 8-1 at 2–232. As the ALJ notes, those records indicate that Plaintiff's health issues are significantly milder than the Sanjur Otero and Racine records suggest.[12] ECF No. 7-2 at 27–28. Although the VA records show that Plaintiff sought medical assistance for back and knee pain on multiple occasions, the prescribed treatment was conservative, ECF No. 8-1 at 80, 90, 207, and the results of physical examinations were closer to normal than those described in the Sanjur Otero and Racine records, *id.* at 98, 206.

The ALJ also provided sufficient reasoning for discrediting the Sanjur Otero and Racine records. The Sanjur Otero and Racine records reference four MRIs taken between September of 2009 and August of 2011, each of which revealed disc bulging and herniation. ECF No. 8-1 at 235, 242–43, 247–48. However, at the March 2022 hearing, Plaintiff testified that he could not have received those MRIs, because he did not "have any MRIs in the United States" and he had not yet moved to Panama at the time these MRIs were supposedly performed. ECF No. 7-2 at 86–

---

[12] Further supporting the notion that the State Agency Physicians' opinions relied heavily on the Sanjur Otero and Racine reports is the fact that they refer to the Racine report by name, ECF No. 7-3 at 6, 22, list the results of the supposed 2009–11 MRIs, *id.* at 6, 23, and contain the results of the supposed physical examinations by Dr. Racine, including Plaintiff's antalgic gait, decreased range of motion in the spine, and positive straight leg raising, *id.* Indeed, it appears that significant portions of the Racine report were copied into Dr. DeBorja's opinion. *Compare* ECF No. 8-1 at 240–42, *with* ECF No. 7-3 at 22–24.

87.  Plaintiff did not recant or otherwise amend this testimony at the December 2022 hearing, even when asked by the ALJ at the December 2022 hearing to confirm its accuracy.  *Id.* at 61.  The Sanjur Otero and Racine records also contain a VA disability rating of 20% that is entirely absent from the VA medical records, ECF No. 8-1 at 11, 234, 241–42, 246–47, and Plaintiff testified that he had not been found partially disabled by the VA, ECF No. 7-2 at 109.

The ALJ was also justified in discounting the Sanjur Otero and Racine records because they contained virtually identical subjective complaints, summaries of record, physical examinations, and diagnoses, despite ostensibly detailing three separate consultations with two different doctors over approximately four years.  *See generally* ECF No 8-1 at 233–49.  While it is unclear how these concerning similarities came about, they raise fair questions about the records' trustworthiness, and so the ALJ validly exercised her authority to discount their credibility when weighing the evidence.  *See Moronta v. Comm'r of Soc. Sec.*, No. 18-cv-2964, 2019 WL 4805801, at *15 n.13 (S.D.N.Y. Sept. 30, 2019) (noting that identical findings by different medical practitioners were "suspiciously uniform"); *cf. In re Justice*, No. 11-mc-3, 2012 WL 2374677, at *20 (E.D. Tenn. June 22, 2012) (finding that "[t]he only credible explanation for . . . identical language" is "knowingly and intentionally cop[ying]"), *aff'd*, 525 F. App'x 291 (6th Cir. 2013); *United States v. Nunn*, No. 14-cr-636, 2015 WL 3764181, at *5 (N.D. Cal. June 16, 2015) (noting that identical police reports would "suggest[] coordinated fabrication").

On this basis, the ALJ had good reason to assign little weight to the opinions of the State Agency Physicians that relied on the Sanjur Otero and Racine records and to find the VA medical records more persuasive.  *See Vorholt v. Comm'r of Soc. Sec.*, 409 F. App'x 883, 889 (6th Cir. 2011) (finding that ALJ did not err in assigning little weight to a physician's opinion when it appeared that physician relied on false records); *Antonio C. v. Comm'r of Soc. Sec.*, No. 17-cv-53,

2019 WL 9075880, at *5 (W.D. Va. Feb. 7, 2019) (finding that the ALJ did not err in assigning little weight to a physician's opinion where it appeared that the physician relied on potentially unreliable information and where the physician's opinion was inconsistent with conservative treatment previously sought by the claimant); *Hodge v. Colvin*, No. 14-cv-584, 2015 WL 5008961, at *8 (E.D. Cal. Aug. 20, 2015) (finding that the ALJ did not err in assigning reduced weight to a psychologist's opinion because the psychologist had apparently relied on false information regarding the frequency of claimant's previous psychiatric treatment); *cf. Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (per curiam) ("Inasmuch as the ALJ found that [the claimant's] self-reports were exaggerated, the ALJ determined that [the physician's] report was unreliable as well. Thus, the ALJ concluded that [a different physician's] testimony was more reliable.").

After placing little weight on the State Agency Physicians' opinions concerning Plaintiff's standing and walking limitations, the ALJ fairly found that the VA medical records were the more reliable source of evidence, and, as stated above, the ALJ found that those records reflected a much less severe situation. ECF No. 7-2 at 27–28. Again, the VA records showed several consultations for back pain, but straight leg raising testing was negative and prescribed treatment was conservative. *Id.* From this, the ALJ concluded that Plaintiff could stand for six hours in a workday, and that his RFC does not include a four-hour standing limitation. *Id.* at 28.

In sum, the ALJ's decision adequately lays out the rationale underlying her determination of Plaintiff's RFC, and that determination is supported by substantial evidence. What Plaintiff refers to as "play[ing] doctor" and "cherrypick[ing]" is simply the ALJ's weighing of evidence, judgments that the ALJ is entitled and expected to make during the adjudicative process. ECF No. 20 at 4; *see Masie N. v. Dudek*, No. 22-cv-2224, 2025 WL 785380, at *11–12 (D.D.C. Mar. 12, 2025) (rejecting an accusation of cherry-picking where "the ALJ squarely addressed [discredited

reports] and explained why he viewed the legion of other medical reports and documentation . . . as more credible"); *Taylor v. Berryhill*, No. 18-cv-316, 2019 WL 5540844, at *10 (D.D.C. Aug. 2, 2019) (rejecting the plaintiff's argument that the ALJ "sidestepped" certain evidence where he "expressly referenced" the evidence and found it outweighed by other evidence in the record), *report and recommendation adopted*, 2019 WL 5538560 (D.D.C. Oct. 25, 2019).  As such, the ALJ did not err in her evaluation of the opinions of the State Agency Physicians.

### B. The ALJ's Evaluation of Plaintiff's Ability to Perform his Past Relevant Work as a Security Guard

#### 1. The Rationale and Evidentiary Basis for the ALJ's Evaluation of Plaintiff's Past Relevant Work as a Security Guard

Plaintiff also contends that the ALJ erred in her analysis of Plaintiff's ability to perform his past relevant work.  In particular, Plaintiff asserts that the evidence in the record as to how he actually performed his past relevant work as a security guard was insufficient for the ALJ to conclude that he could work as a security guard as actually and generally performed.  ECF No. 20 at 5–6.  Additionally, Plaintiff claims that the ALJ erred by failing to analyze the specific physical requirements of Plaintiff's past relevant work as a security guard.  *Id.* at 5.  These arguments fail.

In finding Plaintiff able to "perform his past relevant work as a security guard as actually and generally performed," the ALJ accepted the testimony of the VE at the second hearing, who testified that "a person of the claimant's same age, education, work experience, and residual functional capacity could perform the claimant's past work as a security guard."  ECF No. 7-2 at 29.  Plaintiff, however, argues that because "there is no testimony by the vocational expert about how Plaintiff actually performed his past work," there can be no basis for concluding that Plaintiff could "perform past work as a security guard as actually and generally performed."  ECF No. 20 at 5–6.

Even if, as Plaintiff asserts, the ALJ provided insufficient reasoning or evidence for her finding that Plaintiff could perform as a security guard as actually performed, it would not provide a basis for remand.  In this Circuit, "the relevant question is whether plaintiff can perform [his or] her past relevant work . . . '*either* as the claimant actually performed it *or* as it is generally performed.'"  *Saunders v. Saul*, No. 18-cv-2492, 2020 WL 4501499, at *9 (D.D.C. Aug. 5, 2020) (emphases added) (quoting *Payne v. Barnhart*, 725 F. Supp. 2d 113, 117 (D.D.C. 2010)), *rev'd on other grounds and remanded sub nom. Saunders v. Kijakazi*, 6 F.4th 1 (D.C. Cir. 2021). Additionally, the past relevant work policy outlined in SSR 82-61, which was in effect until June 22, 2024, stated that claimants would be found "not disabled" if they had the RFC to perform either the "actual functional demands and job duties of a particular past relevant job" *or* the "functional demands and job duties of the occupation as generally required by employers throughout the national economy."  1982 WL 31387, at *2 (S.S.A. Jan. 1, 1982).  Thus, in order to find Plaintiff "not disabled" under that standard, the ALJ needed to determine only that Plaintiff could return to his past relevant work as a security guard, either as he had actually performed the job or as the job is generally performed.  Here, the ALJ found that Plaintiff could perform the job of security guard as that job is generally performed in the national economy, and that was sufficient.  *See Roache v. Sullivan*, No. 90-cv-1399, 1991 WL 257979, at *5 (D.D.C. Nov. 19, 1991) (holding that "the fact that the ALJ did not precisely detail actual requirements of [claimant's] past specific work was not in error" where the ALJ had determined that claimant could perform the occupation "as it is generally performed in the national economy").

More, the VE's testimony provides a sufficient basis to support the ALJ's determination that Plaintiff had the ability to perform his past relevant work as a security guard as it is generally performed.  "The ALJ may consult a VE to determine whether Plaintiff's work skills can be used

to do past relevant work or other work that exists in the national economy." *Turner v. Colvin*, 964

F. Supp. 2d 21, 35 (D.D.C. 2013) (citing 20 C.F.R. §§ 404.1560(b)(2) (amended 2024),

404.1566(e)).  "A VE's testimony concerning a plaintiff's ability to work may constitute

substantial evidence where the testimony is given in response to a hypothetical question that

accurately sets forth the plaintiff's physical and mental impairments." *Id.* (citing *Colvin v.

Barnhart*, 475 F.3d 727, 732 (6th Cir. 2007)).  Here, the VE testified that Plaintiff could perform

his past relevant work as a security guard after being provided a hypothetical containing an RFC

identical to the one in the ALJ's findings.  *Compare* ECF No. 7-2 at 25, *with id.* at 69–70.  And

the ALJ "accept[ed] [the VE's] testimony" when determining that Plaintiff had the ability to return

to work as a security guard as that job is generally performed.  *Id.* at 29.  The VE's testimony

constituted substantial evidence supporting that determination.  *Turner*, 964 F. Supp. 2d at 35.

Accordingly, the ALJ did not err in relying on it to determine Plaintiff's ability to return to his past

relevant work as a security guard as generally performed.[13]

---

[13] Plaintiff notes that "[t]he DOT also does not mention exertional limitations, such as 'reach above the shoulder with both extremities,' which also did not line up with the ALJ's hypothetical question to the VE."  ECF No. 20 at 6 (citing ECF No. 7-2 at 69).  It is unclear what, precisely, Plaintiff intends to argue in this single cryptic sentence, and it is not the Court's job "to do counsel's work, create the ossature for the argument, and put flesh on its bones."  *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)).  Perhaps he is contending that the RFC is inconsistent with the DOT because the RFC limits Plaintiff to "frequently reach[ing] above the shoulder with both extremities."  ECF No. 7-2 at 25.  That is simply incorrect.  According to the DOT, an individual can perform the functions of a security guard even when limited to frequently reaching in any direction.  Guard, Security, DOT 372.667-034, 1991 WL 673100.  Plaintiff's RFC allows him to frequently reach above the shoulder with no additional restrictions on reaching.  *See* ECF No. 7-2 at 25.  If Plaintiff is pointing to the slight disconnect between the hypothetical the ALJ provided to the VE, which included a limitation to frequent reaching in any direction, and the RFC, which limits Plaintiff only to frequent reaching above the shoulder, *compare* ECF No. 7-2 at 69 (hypothetical including "frequent[] reach[ing] . . . bilaterally"), *with id.* at 25 (RFC including "frequent[] reach[ing] above the shoulders with both extremities"), that would not support a remand.  To the extent it is an error, it would be harmless because the hypothetical individual described to the VE, who was capable of performing the work of a security guard when restricted to only frequent reaching in any direction, was *more limited* than Plaintiff, who has restrictions only on reaching above the shoulder.  *See, e.g.*, *Thomas v. Saul*, No. 19-cv-1164, 2020 WL 4016035, at *5 (D.N.M. July 16, 2020) ("[T]he Court finds that the inconsistency between the hypothetical posed to the VE and the decisional RFC assessment constitutes a harmless error, because the jobs identified by the VE could be performed under both RFCs."); *Ricardo G. v. Saul*, No. 18-cv-2621, 2020 WL 597835, at *5 (S.D. Cal. Feb. 7, 2020) (finding an error "inconsequential to the ALJ's final determination" where "Plaintiff's RFC is encompassed in the more restrictive hypothetical"), *report and recommendation adopted*, 2020 WL 997047 (S.D. Cal. Mar. 2, 2020); *Timothy S. v. Berryhill*, No. 17-cv-1789, 2018 WL 5973393, at *2–3 (D. Or. Nov. 14, 2018) (finding

Plaintiff offers another argument, relying on a case from a court in the Seventh Circuit, *Gotz v. Barnhart*, 207 F. Supp. 2d 886 (E.D. Wis. 2002), to support his claim that that an ALJ "cannot simply describe [a] past job as generic, e.g. 'light,' and conclude on [the] basis of claimant's RFC that he can return to that work; instead [the] ALJ must list the specific physical requirements of the previous job and assess, in light of the available evidence, claimant's ability to perform those tasks." ECF No. 20 at 5. However, courts in this Circuit have not recognized this principle. But even as it is applied in the Seventh Circuit, the principle articulated in *Gotz* is inapplicable here.

The *Gotz* principle originates from two Seventh Circuit cases, *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984), and *Nolen v. Sullivan*, 939 F.2d 516, 518–19 (7th Cir. 1991). *See Gotz*, 207 F. Supp. 2d at 897. In both cases, the ALJ merely "described the previous jobs generally based on their exertional level" and concluded that the claimant could return to a job at that exertional level without examining the specific demands of the particular job. *Garth v. Berryhill*, No. 16-cv-428, 2018 WL 5307231, at *7 (N.D. Ind. Oct. 26, 2018) (citing *Nolen*, 939 F.2d at 519, and *Strittmatter*, 729 F.3d at 509). The Seventh Circuit found that analysis deficient. *Nolen*, 939 F.2d at 519; *Strittmatter*, 729 F.3d at 509–10. The ALJ's analysis in *Gotz* was similarly deficient: there the ALJ found that the claimant could perform sedentary work, and then concluded that because the claimant's past relevant work was exertionally sedentary, the claimant could perform that work and was therefore not disabled. 207 F. Supp. 2d at 893, 897. The deficiency identified in *Nolen* is the ALJ "equating [a claimant's] past relevant work to [work in the claimant's determined exertional level] in general." *Smith v. Barnhart*, 388 F.3d 251, 252 (7th Cir. 2004). An ALJ should "consider[] not whether [a claimant] could perform some type of [work at the

---

that the ALJ's posing of a more restrictive hypothetical RFC to the VE than the claimant's assessed less restrictive RFC was harmless error).

relevant exertional level] but whether [the claimant] could perform the duties of the specific jobs that [he or she] had held." *Id.*

Even so, the Seventh Circuit has rejected that *Nolen* "requires the ALJ to spell out in detail the demands of each prior job to which the ALJ finds the applicant able to return." *Cohen v. Astrue*, 258 F. App'x 20, 28 (7th Cir. 2007); *see Talbert v. Berryhill*, No. 17-cv-1633, 2019 WL 285312, at *16 (E.D. Wis. Jan. 18, 2019). Instead, it has "construed *Nolen* more narrowly," limiting its application to ALJ decisions that "conclude that the claimant is fit to perform all [jobs at the relevant exertional level] without inquiring into any differences in what the job requires." *Cohen*, 258 F. App'x at 28 (citing *Smith*, 388 F.3d at 252–53). Courts in the Seventh Circuit have found the application of this principle particularly inappropriate where the ALJ explicitly considers the specific jobs that the claimant held, where the evidence of record provides ample support for the ALJ's conclusion, and where the ALJ properly relies on the testimony of a VE to make the finding that a plaintiff could perform a past job. *See id.* ("Here, the ALJ considered the specific jobs [that the claimant] held, so *Nolen* is inapplicable."); *Metzger v. Astrue*, 263 F. App'x 529, 533 (7th Cir. 2008) (rejecting *Nolen* argument where the ALJ relied on VE testimony based on the claimant's description of his previous job); *Cherry v. Berryhill*, No. 16-cv-425, 2018 WL 571944, at *12 (N.D. Ind. Jan. 26, 2018) (rejecting *Nolen* argument where "the ALJ's consideration of Plaintiff's past work did not consist simply of a generic label of 'sedentary'" and "the ALJ considered Plaintiff's specific past work as a telephone solicitor and a customer service clerk, which was described by the vocational expert"); *Archibald v. Astrue*, No. 12-cv-326, 2013 WL 169999, at *14 (N.D. Ill. Jan. 16, 2013) (rejecting *Nolen* argument where the ALJ questioned the claimant regarding the demands of her past work and relied on VE testimony regarding the nature of that work); *Tolbert v. Astrue*, No. 09-cv-1348, 2011 WL 883927, at *14 (S.D. Ind. Mar. 11,

2011) (citing *Cohen*, 258 F. App'x at 28) ("Th[e] principle [from *Nolen*] is inapplicable where an ALJ considered the claimant's specific job and there is evidence in the record as to the duties of that job."); *see also Doris J. v. Comm'r of Soc. Sec.*, No. 17-cv-1389, 2018 WL 6398913, at *4 (S.D. Ill. Dec. 6, 2018) ("[I]n most cases, it would be a 'viable argument' that *Nolen* does not apply where, as here, the ALJ relied on the testimony of a VE to determine that plaintiff could still perform her past job.").

Thus it is clear that, even were the Court to find the *Gotz* principle persuasive, it has no application here. In this case, the ALJ's analysis did not consist only of a conclusion that because Plaintiff could perform at a generic exertion level (*e.g.*, "light work"), he could perform his past work as a security guard which required that same level of exertion, as was true in *Gotz*. In making her determination that Plaintiff could perform his past work as a security officer, the ALJ relied on the VE's testimony concerning Plaintiff's specific past work as a security guard, including that specific job's DOT classification and exertion and skill levels. ECF No. 7-2 at 28–29, 63–64. Even though "the ALJ's decision itself cites [only] the vocational expert's testimony regarding the physical demand and skill level identified in the [DOT], the record contains sufficient evidence of the requirements of the job." *Garth*, 2018 WL 5307231, at *7 (citing *Metzger*, 263 F. App'x at 533). Here, as in *Garth*, Plaintiff included the requirements of his position as a security guard in his Work History Report, Form SSA-3369. ECF No. 8 at 36, 49–50; *see Garth*, 2018 WL 5307231, at *7 (finding no error where the plaintiff "provided details of the requirements of the jobs as he performed them" in his Work History Report). Here, as in *Garth*, The VE stated that he had sufficient information to make a conclusion about Plaintiff's past relevant work, confirming that he needed no further clarifications. ECF No. 7-2 at 56, 63; *see Garth*, 2018 WL 5307231, at *7 ("At the hearing, the vocational expert testified that he did not need any work history clarification

from Plaintiff."). Thus, here, as in *Garth*, the record supports the VE's testimony that Plaintiff could perform his past work as a security guard. 2018 WL 5307231, at *7–8. Finally, the ALJ expressly accepted the testimony of the VE that "a person of the claimant's age, education, work experience, and residual functional capacity could perform the claimant's past work as a security guard." ECF No. 7-2 at 29. That is, the ALJ considered the specific job that Plaintiff held and what it required, not just its exertional level, as was found deficient in *Gotz*.[14] *See Gotz,* 207 F. Supp. 2d at 893; *see also Cohen*, 258 F. App'x at 28; *Garth*, 2018 WL 5307231, at *7; *Cherry*, 2018 WL 571944, at *12. Plaintiff's challenge to the ALJ's decision on that basis is denied.

2.    The New Definition of Past Relevant Work Under the June 22, 2024, Amendments to 20 C.F.R. § 404.1560

Plaintiff also argues that this case should be remanded because a recent change in the regulatory definition of "past relevant work" in 20 C.F.R. § 404.1560 has a material impact on the outcome of the case. Because the definition of "past relevant work" that was in effect at the time of the ALJ's decision should apply, this argument fails.

At the time of the ALJ's final determination, "past relevant work" was defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1) (amended 2024). It was this definition of past relevant work that the ALJ applied in this case. ECF No. 7-2 at 24, 28. On June

---

[14] That the ALJ found that Plaintiff could not perform his past relevant work as a customer service representative is additional evidence that the ALJ considered the specific functions of Plaintiff's past relevant work in her determination. *See* ECF No. 7-2 at 69–70. Plaintiff's RFC allows him to "perform light work as defined in 20 C.F.R. § 404.1567(b)" with non-exertional limitations. ECF No. 7-2 at 25. According to 20 C.F.R. § 404.1567(b), "[i]f someone can do light work," they "can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." Plaintiff's past relevant work as a customer service representative is exertionally "sedentary." ECF No. 7-2 at 63. Thus, if the ALJ were ignoring the specific functions of Plaintiff's past relevant work and considering only the exertional level in general, as was found deficient in *Gotz*, the ALJ would presumably have found Plaintiff able to perform his past relevant work as a customer service representative.

22, 2024—almost eighteen months after the ALJ's final determination—an amended definition of past relevant work became effective that shortened the lookback period to five years. *See* 89 Fed. Reg. 48,138 (Jun. 5, 2024). That provision now defines "past relevant work" as "work that you have done within the past *five* years that was substantial gainful activity and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1)(i) (emphasis added).

Applying the five-year lookback period for past relevant work here would require the Court to remand this case for further administrative proceedings. Plaintiff last performed work as a security guard in August of 2012, ECF No. 8 at 2, which is more than five years, but less than fifteen years, before his date last insured of December 31, 2017.[15] ECF No. 7-2 at 24. Thus, if the five-year lookback period under the current regulation is applicable, Plaintiff's work as a security guard on which the ALJ's non-disability determination was based falls outside of past relevant work.

Plaintiff's argument seeking application of the current regulation's five-year lookback period is unavailing. The Commissioner's rules also speak to the applicability of the five-year lookback period to pending cases. 89 Fed. Reg. 48,138, which set the effective date of Section 404.1560(b)(1)'s amended definition of "past relevant work," states that the Commissioner "will apply the final rule . . . *to all claims newly filed and pending beginning on June 22, 2024*." *Id.* (emphasis added). Plaintiff's claim was filed on February 23, 2017, ECF No. 7-3 at 13, the ALJ's final determination was made on December 27, 2022, ECF No. 7-2 at 19, and Plaintiff acknowledges in his motion that the administrative process was complete and the decision of the ALJ "became the final decision of the Commissioner when the Appeals Council denied Plaintiff's

---

[15] When evaluating DIB claims under Title II where the date last insured is in the past, both the current five-year lookback period and the previous fifteen-year lookback period end on the date last insured. SSR 24-2p, 89 Fed. Reg. 48,479, 48,480 (Jun. 6, 2024); SSR 82-62, 1982 WL 31386, at *2.

request for review on April 25, 2023." ECF No. 20 at 2. Thus, the five-year lookback period would not be applicable to Plaintiff's claim because it was neither filed after nor "pending" on June 22, 2024.[16] *See Brown v. Barnhart*, 370 F. Supp. 2d 286, 291 (D.D.C. 2005) (finding a claim "pending" until the ALJ "issued [a] final decision").

SSR 24-2p, a Social Security Ruling issued on June 6, 2024, that explains how the Commissioner will "evaluate past relevant work in establishing disability," echoes the Commissioner's intent to apply the five-year lookback period only to cases filed after or pending on June 22, 2024. 89 Fed. Reg. 48,479 (Jun. 6, 2024). There the Commissioner repeats that it "will apply this SSR to new applications filed on or after [June 22, 2024] and to claims that are pending on and after [June 22, 2024]." *Id.* at 48,479 n.1. More to the point, however, is that the Commissioner specifically provides federal courts with direction on which definition to apply during judicial review of the Commissioner's disability decisions. The Commissioner states that he "expect[s] that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." *Id.* The rule in effect at the time of the ALJ's December 27, 2022, decision was a fifteen-year lookback period. ECF No. 7-2 at 24, 28.

Although a question of the retroactive application of Section 404.1560(b)(1)'s five-year lookback period has not yet come before this Court, its previous decisions considering the retroactive application of other regulatory amendments comport with the conclusion that the five-year lookback period has no application here. *See, e.g., Caitlin O. v. Kijakazi*, No. 17-cv-1939,

---

[16] The administrative review process for claims made under Title II "has four steps: (1) an initial determination; (2) reconsideration; (3) a hearing before an administrative law judge; and (4) Appeals Council review." *Turnbull v. Berryhill*, 490 F. Supp. 3d 132, 135 (D.D.C. 2020) (citing 20 C.F.R. § 404.900(a)(1)–(4)), *aff'd sub nom. Turnbull v. Kijakazi*, No. 20-5365, 2021 WL 5993232 (D.C. Cir. Dec. 10, 2021). Then, "[a]fter those steps are complete—that is, once a dissatisfied claimant has exhausted the administrative review process—that person may seek review in federal court." *Id.* (citing 20 C.F.R. § 404.900(a)(5)). Again, Plaintiff acknowledges that each step of the administrative review process has been completed here, and that the decision of the ALJ "became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on April 25, 2023." ECF No. 20 at 2.

2022 WL 17370231, at *5 n.15 (D.D.C. Oct. 27, 2022) (applying regulations as they were at the time of ALJ's decision where the Commissioner has provided identical guidance to Federal courts), *report and recommendation adopted*, 2023 WL 4744068 (D.D.C. July 25, 2023), *aff'd sub nom. O'Hare v. O'Malley*, No. 23-5186, 2024 WL 4441579 (D.C. Cir. Oct. 8, 2024), *reh'g en banc denied*, 2024 WL 4993609 (D.C. Cir. Dec. 5, 2024); *Davis v. Berryhill*, 272 F. Supp. 3d 154, 169 n.18 (D.D.C. 2017) ("This Court's decision considers the regulations as they were at the time the ALJ rendered her decision.").

Courts that have directly considered the retroactive application of Section 404.1560(b)(1)'s five-year lookback period have arrived at this same conclusion. The Ninth Circuit has declined to apply the five-year lookback period for past relevant work to claims that were adjudicated by the Commissioner before it went into effect. *See Benson v. Dudek*, No. 24-4647, 2025 WL 1404946, at *2 (9th Cir. May 15, 2025); *Dial v. O'Malley*, No. 23-3423, 2024 WL 4471510, at *1 (9th Cir. Oct. 11, 2024). Instead, the Ninth Circuit has decided to abide by the guidelines in SSR 24-2p, specifically that the Commissioner "expect[s] that Federal courts will review [the Commissioner's] final decisions using the rules that were in effect at the time [the ALJs] issued the decisions." 89 Fed. Reg. 48,479 n.1 (Jun. 6, 2024); *see Benson*, 2025 WL 1404946, at *2. The Tenth Circuit has also refused to apply the five-year lookback period in cases adjudicated before June 22, 2024, citing the Commissioner's use of the words "newly filed and pending" and reasoning that "administrative rules will not be construed to have retroactive effect unless their language requires this result." *Tina W. v. Comm'r, SSA*, No. 24-4029, 2024 WL 5165687, at *3 & n.4 (10th Cir. Dec. 19, 2024) (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)). Because "[r]etroactivity is not favored in the law," *Bowen*, 488 U.S. at 208, the Court will follow the lead

of those courts and continue its practice of applying the regulation in effect at the time of the ALJ's

decision.[17]  *See Caitlin O.,* 2022 WL 17370231, at \*5 n.15; *Davis*, 272 F. Supp. 3d at 169 n.18.

Accordingly, Plaintiff's challenge to the ALJ's determination that he could perform past

relevant work as a security guard on the basis that the current five-year lookback period should

apply is denied.[18]

---

[17] Plaintiff also points to Emergency Message 24028 ("EM-24028"), issued by the Commissioner on June 25, 2024, which states that the Commissioner "will not apply res judicata to bar readjudication of a previously adjudicated period when the prior final determination or decision finding the claimant not disabled is dated prior to June 22, 2024" when the past relevant work cited in the prior final determination is no longer considered past relevant work under the current rule.  ECF No. 20-6 (citing https://secure.ssa.gov/apps10/reference.nsf/links/06252024095031AM).  This message was conveyed to SSA adjudicators to provide guidance in applying the Commissioner's policies in light of the June 22, 2024, amendments to the regulatory definition of past relevant work in 20 C.F.R. § 404.1560.  EM-24028 suggests that if Plaintiff's claim was remanded for further administrative proceedings, the ALJ could not apply res judicata to find Plaintiff not disabled, but nothing in EM-24028 itself provides a basis for a remand here.  EM-24028 does not even appear to be applicable to federal courts, and if it is, the rest of the emergency message contains multiple references to the text of the regulations and SSR 24-2p, which, as discussed above, instructs this Court to apply the fifteen-year lookback period, anyway.

[18] At the end of his motion, Plaintiff presents a perfunctory, yet sweeping, argument based upon the Supreme Court's recent decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).  Under *Loper Bright*, Plaintiff contends, "the Agency's past interpretation of past relevant work cannot be enforced now under constitutional due process and the Administrative Procedure[] Act."  ECF No. 20 at 7.  This argument fails because it is entirely undeveloped by Plaintiff.  "Mentioning an argument 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones' is tantamount to failing to raise it."  *Al-Tamimi*, 916 F.3d at 6 (quoting *Schneider*, 412 F.3d at 200 n.1); *see also United States v. TDC Mgmt. Corp., Inc.*, 827 F.3d 1127, 1130 (D.C. Cir. 2016) ("This argument is forfeit because [Plaintiff] does not further develop it . . . after this 'single, conclusory statement.'" (quoting *Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008))).  Plaintiff also chose not to file a reply brief, where he could have responded to Defendant's argument against the application of *Loper Bright* to Section 404.1560.  ECF No. 20 at 7; ECF No. 26 at 22; *see Queen v. Schultz*, 310 F.R.D. 10, 25 (D.D.C. 2015) ("[B]y failing to respond to the defendant's opposing arguments in his reply, the plaintiff has abandoned these arguments."), *aff'd*, 671 F. App'x 812 (D.C. Cir. 2016); *Cannon v. Wells Fargo Bank, N.A.*, 952 F. Supp. 2d 1, 11 (D.D.C. 2013) (holding that where a plaintiff failed to respond to the defendants' arguments, the court would treat the arguments as conceded); *cf. Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 268 (D.D.C. 2012) (explaining that "the Court may treat the plaintiff's failure to oppose the defendant's . . . arguments as a decision to concede those arguments").

In any event, *Loper Bright* is inapplicable here.  In *Loper Bright*, the Supreme Court held that "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." 603 U.S. at 413.  Unlike in *Loper Bright*, Plaintiff invokes that principle here to argue that this Court should not defer to the Commissioner's interpretation of *its own regulation*—20 C.F.R. § 404.1560.  But "*Loper Bright* presented an issue of an agency's interpretation of a statute, not of its own regulations."  *Battineni v. Mayorkas*, 752 F. Supp. 3d 195, 207 n.3 (D.D.C. 2024).  As Defendant notes, Plaintiff has not identified any statute material to the dispute that would require interpretation by the Court under the guidance of *Loper Bright*.  ECF No. 20 at 7; ECF No. 26 at 22. Indeed, the argument raised by Plaintiff here concerning the shortening of the past relevant work lookback period to five years is better characterized as one of retroactivity than of interpretation of 20 C.F.R. § 404.1560.

## IV.    CONCLUSION

For the foregoing reasons, an order reflecting that Plaintiff's motion for judgment of reversal, ECF No. 20, is **DENIED** and Defendant's motion for judgment of affirmance, ECF No. 26, is **GRANTED** will be issued.


Date: July 2, 2025

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE